MERCHANTS & MANUFACTURERS BANK *et al. v.* STATE.

(In Banc. April 8, 1946. Suggestion of Error Overruled May 13, 1946.)

[25 So. (2d) 585. No. 35978.]

Hathorn & Hathorn, of Hattiesburg, for appellants, Marie J. Black and American Pine Products Corporation.

**Buchanan & Harper** and **Welch & Cooper,** all of Laurel, for appellant, Merchants & Manufacturers Bank of Ellisville.

**Greek L. Rice,** Attorney General, by **W. B. Fontaine,** Assistant Attorney General, for appellee and cross-appellant, State of Mississippi.

**Buchanan & Harper,** of Laurel, for appellee and cross-appellee, Tide Water Associated Oil Company.

Argued orally by **J. R. Buchanan** and **F. C. Hathorn**, for appellant, and by **W. B. Fontaine**, for appellee.

**McGehee, J.,** delivered the opinion of the court.

The Merchants and Manufacturers Bank of Ellisville, Mississippi, and the Tidewater Associated Oil Company filed the original bill of complaint herein under Chapter 309, Laws 1940, to quiet and confirm their title to 340 acres of land in the First Judicial District of Jones County and the oil, gas and mineral lease thereon, respectively, as against the State of Mississippi, which had patented the land to certain predecessors in title of the complainants, and also against Marie J. Black as owner of the land at the time the same was sold to the State for taxes on September 16, 1935, for the 1934 taxes.

The record discloses that on October 12, 1940, three applications were made to the State Land Commissioner for the purchase of said land from the State by H. W. Bufkin, R. E. McKenny and George Clinton Koch; that on the 28th day of January, 1941, after the purchase price of the land had been fixed and determined by the proper

state officials, these three individuals undertook to sell and convey by warranty deed their respective portions of said land to H. B. Gammel, who was then indebted to appellant Merchants and Manufacturers Bank; that on January 29th the said Gammel asked the appellant bank to advance to him the further sum of $500 with which to pay his grantors for said land, the additional loan of $500 to be used in paying into the State Treasury the purchase price, patent fees and costs for the three patents which had not at that time been issued, and whereupon the said Gammel agreed in consideration thereof to convey the land to the appellant bank in settlement of his entire indebtedness; that thereupon the appellant bank mailed its cashier's check to the State Land Office with the request that the patents in favor of the three applicants, when issued should be mailed to the said bank; that on the next day the said Gammel executed his warranty deed to the bank for said land; that on March 13, 1941, the bank executed an oil, gas and mineral lease in favor of D. G. Dunbar, which lease provided for the payment of $380 in cash and for a like amount as an annual rental; that on March 14, 1941, the three patents were duly issued in favor of the three original applicants therefor, and mailed to the appellant bank as requested; and that three days later the oil, gas and mineral lease was duly transferred and assigned by Dunbar to the Tidewater Associated Oil Company, which had paid an additional $380.00 as an annual rental to the bank prior to the trial of this case.

The State of Mississippi filed its answer and cross bill, and in the latter it prayed for the cancellation of the patents, the deeds, and the lease hereinbefore mentioned and asked for a decree confirming the State's claim of title to all of the land in controversy, and to the oil, gas and other minerals thereon, and for the forfeiture to the State of the purchase price, fees and costs paid by the appellant bank in connection with the issuance of said patents. This cross bill also prayed for the cancellation

of any claim on the part of the said Marie J. Black, who owned the land at the time of the tax sale on September 16, 1935, as aforesaid, and for the confirmation of the State's claim of title as against her.

The appellant Marie J. Black filed her answer and cross bill, denying the right of the original complainants and of the State to the relief sought by them respectively, and alleging that she was entitled to have her own claim of title quieted and confirmed on the ground that the tax sale in question was void, and she also prayed for an accounting as against the appellant bank and the oil company on account of the rentals which had accrued and been paid under the said oil and gas lease.

The trial court entered a final decree whereby the patents and the subsequent deeds of conveyance and the lease were cancelled, and whereby the purchase price, fees and costs paid to the State by the appellant bank in connection with the issuance of the patents were declared forfeited, and the State's claim of title to the land confirmed. In consequence thereof the Court dismissed the original bill of complaint with prejudice, and the decree denied the relief prayed for by the appellant Marie J. Black for the reason that the Court was of the opinion that the tax sale of September 16, 1935, was valid. This final decree, however, adjudicated that the original complainant, Tidewater Associated Oil Company, was entitled to retain its oil and gas lease as an innocent purchaser.

All of the parties other than the said oil company have prosecuted an appeal. And both the State and Marie J. Black complain of the failure of the trial court to cancel the oil and gas lease, and the said Marie J. Black further complains of the confirmation of the claim of title of the State to the land in question, based upon the adjudged validity of the said tax sale, and also of the failure of the trial court to confirm her title and to order an accounting in her favor as to the rentals paid under the said oil and gas lease. The appellant bank complains

of the confirmation of the State's claim of title to the land, and also of the declared forfeiture of the purchase price, fees and costs paid by the bank therefor to the State in the event this Court should hold that the State had acquired no title, or in the event this Court should hold that the State had title to the land but that the appellant bank was not legally authorized to acquire the same in the manner hereinbefore set forth.

In discussing the questions thus raised on this appeal we shall begin with the tax sale in question. Both the original complainants in their suit for confirmation and the State of Mississippi in its cross bill in that behalf made the specific allegations that the lands in question were duly and legally assessed, which would include the approval of the assessment rolls in the First Judicial District of Jones County at the August 1934 meeting of the board of supervisors, sitting at Ellisville in said district. The appellant Marie J. Black specifically denied that the lands were duly and legally assessed for taxes for the year 1934 prior to the sale thereof on September 16, 1935. The said appellant set forth in her pleadings numerous grounds as to why the assessment of the lands for taxes for the year 1934 was invalid, but she failed to specifically raise the point that the order of the board of supervisors whereby it undertook to approve the assessment roll for 1934 was entered at a meeting the minutes of which were not signed at all. However, both the original complainants and the State of Mississippi under its cross bill, seeking to confirm their title to the land, were required in order to obtain such relief to prove that the land had been duly and legally assessed for taxes for the year 1934, since that allegation of fact in their bill and cross bill, respectively, was specifically denied by the appellant Marie J. Black.

The State, however, in its briefs on both the appeals and cross-appeals, declines to discuss the effect of the failure of the president of the board of supervisors to sign the minutes of the meeting at Ellisville, at which the

order was entered approving the assessment rolls of the First Judicial District, and for the reason, as the State contends, that the question was not raised in the trial court. But we are of the opinion that since the proof, which went in without objection, in the trial court disclosed affirmatively that the minutes of the said meeting were not signed, the question is sufficiently raised by the denial of the appellant Marie J. Black that there had been a legal and valid assessment of the land for taxes for 1934, as alleged in the original bill and in the cross bill of the State.

The proof discloses that the July 1934 meeting of the board, at which the land rolls were supposed to have been equalized, adjourned to meet at Laurel in the Second Judicial District on the 7th, 8th, 9th and 11th days of August for the purpose of hearing objections to the assessments and approving the roll, and to meet at Ellisville in the First Judicial District on August 10th for that purpose, after notice to the taxpayers in that behalf. The August 1934 meeting of the board was the regular time for the holding of its meeting at Laurel, but by virtue of the previous order entered and the notice to the taxpayers in that behalf the board was entitled to meet at Ellisville on August 10th, 1934, to hear objections and approve the roll of the lands in the First Judicial District.

The proof further discloses without dispute that the only sitting of the board at Ellisville during the month of August was on August 10th, 1934, at which an order was entered on the minutes reciting the necessary jurisdictional facts and ordering that the assessment roll be approved. And it is undisputed that the minutes of the meeting at which such order was entered were in fact not signed at all by the president of the board of supervisors, as hereinbefore stated. Therefore, under the holding of the cases of Gardner v. Price, 197 Miss. 831, 21 So. (2d) 1, and Brand v. Board of Supervisors, 199 Miss. 129, 21 So. (2d) 579, there was no valid assessment of

this land or approval of the assessment roll for the year 1934. Hence the tax sale made on September 16, 1935, for the taxes for the year 1934 was absolutely void.

The appellants, bank and oil company, in reply to the briefs of counsel for Marie J. Black have conceded that it was developed upon the trial that this tax sale was void, but the State urges that the alleged invalidity of the said tax sale on the ground above mentioned should not now be considered, for the reason that the point was not specifically raised in the trial court. However, in view of the denial of the allegations that the lands had been duly and legally assessed, it was incumbent on the State to prove such fact as a part of its case, and we are therefore of the opinion that the court here is justified in considering the question, and in holding that on that ground the State acquired no title by virtue of the said tax sale.

It is true that when the board of supervisors adjourned at Ellisville on August 10th, 1934, to reconvene at Laurel on the next day, without having signed the minutes at Ellisville, the order entered at Laurel on the 11th, whereby the land assessment rolls in the Second Judicial District were duly approved, may be sufficiently general in its terms as an attempt to approve the rolls of the entire county, the minutes of the meeting held at Laurel on August 11th, 1934, having been signed. However, Section 12 of Chapter 169, Laws 1906, dividing Jones County into two separate judicial districts, provides, among other things, that the board of supervisors "in passing on said assessment roll, shall, at the proper meeting held by them at Laurel, approve such of said roll as shall relate to and embrace property included and being in the Second District, and at the proper meeting held in Ellisville shall approve such of said roll as shall relate to and embrace property included in the First District, in all instances acting upon said rolls, so far as the territory embraced in each of the respective districts is concerned, in the same manner as though the action or approval of the assess-

ment rolls related to the approval thereof of different counties; . . ." And it was held in the cases of Yazoo Delta Investment Co. v. Sudduth, 70 Miss. 416, 12 So. 246, and Hunter v. Bennett, 149 Miss. 368, 115 So. 204, that a board of supervisors is without authority to approve the assessment rolls of one Judicial District of the county while in session in the other district and by an order entered on its minutes only in the latter district.

There are numerous other grounds urged by the appellant Marie J. Black as to the invalidity of the tax sale, and also as to whether or not there was a redemption of the lands by her, or on her behalf, from the tax sale of September 16, 1935, but in view of the conclusions hereinbefore stated we deem it unnecessary to express any opinion on these other questions.

It necessarily follows from what we have heretofore stated that neither the original complainants nor the State was entitled to have their claim of title confirmed as against the said Marie J. Black, based upon the tax sale of September 16, 1935.

There was also a sale of the same land to the State on October 9th, 1933, for the 1932 taxes, but it is to be conceded that this sale was void for the reason that the order of the board of supervisors fixing October 9, 1933, as the date of such sale was entered on September 6, 1933, prior to the expiration of the time allowed the taxpayer to pay his taxes without the imposition of damages and penalty, and which time did not end until after the regular sale day on the third Monday of September of said year. Jackson v. Webster, 196 Miss. 778, 18 So. (2d) 298.

There was also a tax sale made of the said land on September 16, 1940, whereat the president and cashier of the appellant bank became the purchaser, for the use and benefit of the appellant bank. And it is urged that in view of Chapter 188, Laws 1934, Section 9935, Code 1942, declaring that the State or an individual purchaser at a tax sale shall acquire "a perfect title to the land sold for

taxes, but without the right of possession for the period of and subject to the right of redemption,'' the appellant bank had such inchoate interest in the land as to entitle it to acquire whatever right the State may have had under and by virtue of the tax sale of September 16, 1935, and that therefore the bank was not disqualified to acquire the title from its grantor Gammel, a vendee of the patentees, in the manner hereinbefore set forth. This status of the bank as purchaser through its president and cashier at the September 16, 1940, sale, prior to any of its negotiations with the said Gammel in regard to acquiring the title through the patentees of the State, together with the fact that the bank was not acquainted with the applicants for the patents, and knew nothing about their applications until after the said Gammel had acquired a warranty deed from them, is urged in behalf of its contention that it was not disqualified to purchase the State's alleged title through the said Gammel.

The validity of the said tax sale of September 16, 1940, is the subject matter of another pending suit wherein the appellant bank and the oil company are seeking to have their title, as derived through said tax sale, confirmed as against the appellant Marie J. Black. The two suits were once consolidated, but the order in that behalf was later rescinded, and the said complainants in both suits now complain of the rescission of the said order of consolidation. But without setting forth in detail the facts which disclose the dissimilarity of the two cases, we will merely say that we are of the opinion that the Chancellor committed no error in untangling the two cases.

The remaining questions to be decided are, (1) whether the trial court was correct in declaring a forfeiture to the State of all moneys, fees and costs paid by the appellant bank in connection with the issuance of the patents in question, and (2) whether the appellant Marie J. Black is entitled to an accounting for the moneys collected by the bank from the lessee Dunbar and his assignee,

the oil company, under the oil and gas lease, as prayed for in her cross bill.

As to the forfeiture in favor of the State, it will be found that Section 6026, Code 1930, Section 4108, Code 1942, prohibits the purchase by any one person of more than one-quarter section of the public lands in one year, and further provides that "all lands acquired, directly or indirectly, by any person, in contravention of this and the preceding sections, shall escheat to the state, and all moneys and fees paid therefor shall be forfeited." Section 6027, Code 1930, Section 4109, Code 1942, prohibits a corporation from purchasing or becoming the owner of any of the public lands, directly or indirectly, except under the conditions therein enumerated, and which conditions are not present in this case. This Section, however does not by its terms provide for a forfeiture of any moneys and fees that may have been paid to the State by a corporation for such lands. Section 6028, Code 1930, Section 4110, Code 1942, provides that "all fraudulent purchases of public lands heretofore made are void, excepting the rights of innocent purchasers without notice; and moneys and fees paid in furtherance of any such fraudulent purchase are forfeited to the state."

Therefore, unless the said Section 6026, Code 1930, supra, can be invoked to work such a forfeiture, then no forfeiture in the instant case is provided for, because Section 6027, Code 1930, supra, does not provide for a forfeiture at all, but merely prohibits a corporation from purchasing or becoming the owner of any of the public lands, and the said Section 6028, Code 1930, supra, by its express language provides for the forfeiture of moneys and fees paid in furtherance of a *fraudulent* purchase. This Section being highly penal, and being limited to *fraudulent* purchases of public lands *heretofore* made, that is to say prior to the enactment of said statute, can not be invoked because there is no proof of any fraud having been committed, it not being claimed that the applicants made any misrepresentations of fact, or that

the price paid was inadequate, or that they were guilty of any actual fraud. Nor was there any attempt to show that the bank was guilty of more than an attempt to collect a debt from a customer by its acquisition of the land from him as a vendee of the patentees.

And Section 6026, Code 1930, supra, is inapplicable for the reason that the appellant bank did not acquire, either directly or indirectly, any of the public lands from the State by its purchase of the State's alleged title through the bank's debtor Gammel. Since the State had no title to the land, the bank could not acquire title from the State, directly or indirectly, fraudulently or otherwise. Most assuredly the State can not be defrauded of the title to lands when it had no title to convey by a patent to anyone.

Moreover, on the question of the Bank's good faith, it is presumed to have known that under Section 53 of Chapter 165, Laws 1936, Section 5216, Code 1942, it was entitled to own "such real estate as shall be purchased by or conveyed to such bank in satisfaction of or on account of debts previously contracted in the course of its business." And while this provision does not relate to a purchase of any of the public lands from the State by a bank it would not be unreasonable to indulge the presumption that it could furnish the basis for the bank's assumption that it was entitle to take the deed from Gammel in settlement of his indebtedness to the bank, after he had obtained warranty deeds from the patentees of the State to said land.

We are, for all of the reasons hereinbefore stated, of the opinion that the decree of the trial court is erroneous in declaring a forfeiture of the purchase price, fees and costs paid for the lands to the State.

As to whether or not the appellant Marie J. Black is entitled to an order for an accounting from the bank and the oil company for the cash consideration and rentals paid to the bank under the oil and gas lease, she contends that neither the bank nor the oil company has

taken possession of the land or minerals in a manner adverse to the constructive possession that may attach to the alleged ownership of the said appellant thereto. Nor is it claimed under either the pleadings or the proof that she has been prevented from executing any lease in her own right of the minerals underneath said land by reason of this outstanding lease in favor of the said oil company, at any time prior to the trial of this cause, if such fact would be material. At any rate if the Bank acquired no title to the land through its purchase from Gammel as a vendee of the patentees from the State, it may become liable under its warranty of title contained in the oil and gas lease for the refund of the consideration paid by its lessee Dunbar and his assignee the oil company, in the event that the bank should fail to sustain its claim of title under its purchase at the tax sale on September 16, 1940, the validity of which tax sale purchase is involved in the other suit now pending in the trial court. If so, the bank could not be held liable to refund the said consideration to its lessee Dunbar and his assignee the oil company and also to the said Marie J. Black. Then, too, the said Marie J. Black would not be entitled to accept the consideration paid to the bank for the said oil and gas lease and the annual rentals accrued and to accrue thereon without being held to have ratified the said lease, and she expressly disclaims any intention or desire to ratify the same. We are, therefore, of the opinion that the trial court was not in error in declining to order an accounting in her favor as to the consideration paid under the said oil and gas lease.

It, therefore, follows that we should hold that the final decree of the trial court should be reversed wherein it undertakes to quiet and confirm the State's claim of title to the land in controversy on the ground that the tax sale of September 16, 1935, was valid, or on the ground that it has otherwise acquired title thereto; also wherein it holds that the purchase price, fees and costs paid by the appellant bank to the State should be forfeited; and

also wherein it declines to confirm the claim of title of the said Marie J. Black to the land insofar as the tax sales of October 9, 1933, and September 16, 1935, are concerned. And while the trial court was correct in its finding of fact that the appellant oil company was an innocent purchaser of the oil and gas lease, we are of the opinion that it was error to confirm the said lease in view of the holding that neither the State, the patentees, nor the subsequent vendees of the land had acquired any title thereto on account of the said two tax sales, and that hence the oil company could acquire no greater right than the state had, even though it may have been innocent of the want of authority, if any, on the part of the bank to purchase the land under the circumstances; but that, nevertheless, the trial court was correct in declining to order the accounting prayed for as aforesaid.

The said decree will, therefore, be reversed and a decree entered here in favor of the said Marie J. Black as against the State, the bank and the oil company as to the invalidity of the said tax sales of October 9, 1933, and September 16, 1935; reversed and decree rendered here against the State in all respects wherein it adjudicates any rights to exist in favor of the State in the premises; and a decree will be entered here in favor of the appellant bank as to the declared forfeiture to the State of the purchase price, fees and costs paid for the patents; and affirmed wherein it denies the accounting prayed for by the said Marie J. Black.

Affirmed in part, reversed in part, and decree here accordingly.