CITY OF ELLISVILLE *v.* SMITH, et ux.

May 17, 1954

No. 39239 65 Adv. S. 1 72 So. 2d 451

*L. K. Saul,* Ellisville, for appellants.

*Matthew Harper, Jr.,* Laurel, for appellees.

LEE, J.

This was a suit by Sanford Smith and wife against J. P. Myer II and the City of Ellisville to cancel and remove clouds from the title of complainants to 60 acres of land. There was a decree for the complainants, and the City appealed.

The bill of complaint contained a deraignment of title, which showed that the complainants obtained a deed to the land in November 1910. It was alleged that they had lived on it ever since, and had, in effect, exercised all acts of ownership thereover of which it was susceptible. The clouds, which were sought to be removed, consisted of (a) a tax sale by the tax collector of the City on April 6, 1933, and (b) two quitclaim deeds, executed by the City to J. P. Myer II of date of March 7, 1940, and November 4, 1941. It was charged that the city assessments for 1932 were copied from the assessment roll of Jones County; that the assessment roll of the county for that year was void, pointing out wherein it was void; that the city, in adopting as its assessment roll the copy from the county roll, did not fix a time and place for hearing objections of taxpayers, nor did it give them notice thereof; and that the assessment, being invalid, the sale based thereon was void, and the city's subsequent conveyances were also void. Several additional grounds for relief were also pled.

The defendants, by their answer, denied all material allegations of the bill of complaint.

The proof showed that the 60 acres of land is situated in the Ellisville Separate School District, but outside of the corporate limits of the city. Smith obtained title thereto in November 1910, and he and his wife have

lived on it ever since. It was assessed to him for the year 1932. As its assessment roll for the separate school district, the city adopted a copy of the assessment roll of the county for that district. The governing authorities of the city, at the time of the adoption of the assessment roll, did not fix a time and place to hear objections on the part of taxpayers, nor did they in fact give any notice for that purpose. Thereafter on April 6, 1933, the tax collector sold the land to the city for the delinquent taxes of 1932.

In Grant v. Montgomery, 193 Miss. 175, 5 So. 2d 491, this Court held that the sale, in Jones County, of a lot for 1932 taxes was void because of the invalidity of assessments under which the sale was made, ''due to the lack of legal process and notice to the taxpayer prior to the equalization and approval of the assessment rolls; * * *''. A copy of the proceedings of the board of supervisors of Jones County in regard to its assessment roll for 1932 was introduced. The same infirmity referred to in Grant v. Montgomery, supra, existed in the county assessment of the property here in question.

The city, in copying the applicable part of the county roll, was evidently following the provisions of Section 2580, Code of 1930, by which it was provided that the municipal assessment of property outside the corporate limits but forming a part of the municipal separate school district ''shall be made by the clerk or tax collector, by copying from the county assessment roll, that portion thereof which embraces property or persons within the limits of such separate, adjacent annexed territory, which copy shall be made in the same way and in the same manner as the copy is above required to be made of the property and persons inside of the corporate limits of such city, * * *''. By a further provision thereof, the copy was to be placed in the hands of the municipal tax collector, and would be his warrant for the collection of the municipal separate school district tax on such property.

By Section 2582, Code of 1930, it was provided as follows: *"The mayor and board of aldermen of a city, town, or village, may, at a regular or special meeting, to be held in September or October in each year, increase or diminish the valuation of property as assessed for taxation. Ten days' notice of the meeting at which such changes are to be made shall be given by posting written notices thereof in five or more public places in the municipality, and in cities the notice shall also be published in a newspaper, if there be one published therein.* Any person aggrieved by the action of the mayor and board of aldermen may appeal therefrom to the circuit court as in other cases of appeal, and the same shall be tried de novo in the circuit court." (Emphasis supplied).

Now the mayor and board of aldermen of the city in approving the assessments as copied from the county roll, did not in fact increase or diminish the valuation of property as assessed for taxation on the county roll.

The city takes the position that it complied with Section 2582, supra, and even if the county assessments were void, such invalidity did not impair its assessments. It, in effect, contends that, since it made no change in the county assessments, it was not requisite that taxpayers be given an opportunity to protest or object to their assessments.

 The statute did not expressly require the giving of notice, unless the assessments were to be increased or diminished. If the assessments on the county roll, as copied, had been valid, there would be good reason to say that it was unnecessary for the mayor and board of aldermen to give notice of the copied assessment roll to the taxpayers of the school district. They were presumed to know the law. Hence they knew, when their assessments were being equalized by the board of supervisors, that the city could copy and use them for its assessment. So, if they did not object to their county assessments, they could have no valid ground to object

to those assessments as copied for the purpose of municipal taxation, because they had already had their day in court.

But the county assessments were void for the reasons stated in Grant v. Montgomery, supra. The taxpayers were not given their day in court so far as those assessments were concerned. It follows, therefore, that if the city assessment should be upheld in this case, approval would be given to an assessment on which a tax sale was made and on account of which property was taken from its owners, who were never given the right to protest or object thereto, and who have not, therefore, had their day in court.

The city also contends that appellees accepted quitclaim deeds from Myer; that they did not pay city taxes until after the receipt of those deeds; and that, by failing to pay taxes from the date of sale until the receipt of such deeds, they ought to be estopped to claim that the tax deed was invalid.

The city tax, at the time of sale, was $14.17. The consideration in the city's deeds to Myer was $67.50. Evidently this amount included taxes for several years.

Besides the city did not occupy this land, following the tax sale, so as to receive the benefit recognized in Hamner v. Yazoo Delta Lbr. Co., 100 Miss. 349, 56 So. 466. The appellees went into possession in 1910, and have been in possession ever since. There can therefore be no basis for estoppel. Merchants & Manufacturers Bank v. State, 200 Miss. 291, 25 So. 2d 585; Grant v. Montgomery, supra; Russell Investment Corp. v. Russell, 182 Miss. 385, 178 So. 815, 182 So. 102; and authorities there cited.

The issue in this case was whether or not the appellees, the owners of this property, lost it by reason of the tax sale. Clearly the sale was void because the precedent assessment thereof was void. Merchants & Manufacturers Bank v. State, supra.

Since the city derived no valid title from the tax sale, its grantee, by his two quitclaim deeds, likewise obtained no valid title.

In view of what has been hereinbefore said, it is unnecessary to consider the additional grounds for the invalidity of this tax sale, as contended for by the appellees both in the court below and here.

The cause is therefore affirmed.

Affirmed.

*McGehee, C. J.,* and *Hall, Kyle* and *Holmes, JJ.,* concur.