477 So.2d 224 (1985)
Arthur SMITH d/b/a Real Estate One
v.
H.C. BAILEY COMPANIES, et al.
No. 54659.
Supreme Court of Mississippi.
August 7, 1985.
As Modified on Denial of Rehearing October 2, 1985.
*226 James E. Lambert, Taylor, Covington, Smith, Lambert & Matrick, Jackson, for appellant.
Charles G. Copeland, Heidelberg, Woodliff & Franks, James Leon Young, Young, Scanlon & Sessums, Jackson, Gee Ogletree, Young, Scanlon & Sessums, Brandon, for appellees.
Before PATTERSON, C.J., and HAWKINS and PRATHER, JJ.
PRATHER, Justice, for the Court:
The substantive legal issue of this lawsuit concerns the liability of the (1) surviving co-owner, (2) the devisees of the deceased co-owner and (3) the listing broker *227 for real estate commissions allegedly due to the procuring broker, Arthur Smith.
However, the substantive issue is complicated procedurally by the consolidation of (1) one suit filed in chancery court under the old rules of civil procedure with (2) a subsequent suit filed in the circuit court after the effective date of the new Mississippi Rules of Civil Procedure. In the (3) consolidated case the Circuit Court of Hinds County granted summary judgment to all defendants.
The plaintiff/appellant Arthur Smith, the alleged procuring broker, appeals from entry of the summary judgment in favor of the defendants/appellees, assigning as error that:
I. The plaintiff should have been allowed to voluntarily dismiss the circuit court action under the new Mississippi Rules of Civil Procedure, and proceed under the procedural rules in effect on July 15, 1981;
II. The circuit court was manifestly wrong in granting defendant, George F. Woodliff, summary judgment;
III. The trial court should have granted plaintiff's motion for reconsideration and overruled the summary judgment previously granted to Woodliff; and
IV. The circuit court judge was manifestly wrong in granting summary judgment to the Bailey defendants and should have granted partial summary judgment to the plaintiff.

FACTS
Sometime in October of 1978, Johnny Gore, a salesman for Real Estate 1, Arthur Smith broker, showed Lomax Anderson a piece of property located at the intersection of Old Canton Road and County Line Road in Madison County, the property being the present site of a Kroger grocery store. The title to the real estate was held by H.C. Bailey, Sr. and George F. Woodliff, each owning an undivided one-half interest. Anderson was in the business of buying parcels of property and developing them for use by large retail food and drug stores. The business name under which Anderson operated was Inverness Construction Co. Anderson also was allegedly a partner in ICC Development Company. The record is not developed to indicate in which capacity Anderson was viewing the property, or whether for both businesses, or either.
After viewing the property, Gore took Anderson to meet with W.C. Bailey, Jr., of H.C. Bailey Co. who was the listing agent[1] under an oral listing from the owner. At this meeting Anderson decided the price at approximately $3.00 per foot was too high, and the meeting was concluded. Apparently not satisfied that the negotiations were concluded, Gore asked Bailey to protect him on his client as a prospective buyer. In response to this request, Bailey supplied Gore with a letter which stated:
October 24, 1978
Dear Mr. Gore:
Regarding our previous conversation concerning our property located on County Line Road and on Old Canton Road, I am hereby protecting you on your client in the event a sale or lease is consummated. The commission would be six percent and the split 50/50 between Real Estate 1 and H.C. Bailey Co. The client's name is Mr. Lomax Anderson of Inverness Construction Co. in Jackson, Mississippi.
 Sincerely,
 H.C. BAILEY COMPANY
S/W.C. Bailey
W.C. Bailey
Vice President
According to Bailey, even though Anderson was Gore's client, Gore would have to bring him an offer in a reasonable period to secure a commission.
In the summer of 1979, Gore left Real Estate 1. Subsequently, on April 27, 1980 H.C. Bailey, Sr. died, and his one-half interest *228 in the property was devised to his widow, Jeanette Bailey, and children, Catherine Bailey Ingels, Hugh Coyt Bailey, and Bill Bailey.
In July of 1980, an option contract was entered into between the owners of the property, the Bailey devisees and George F. Woodliff, with the purchaser, ICC Development Co. ICC is a partnership formed in 1980 and composed of Lomax Anderson, Charles E. Gibson, and Robert Miller. The record is not clear as to whether the ICC Development Company is the same company as Anderson's Inverness Construction Company although it is apparent that Anderson is the dominant figure in each. Gibson is the partnership lawyer and handles the business dealings for the ICC Development Company. Prior to the formation of the partnership, Gibson handled Anderson's business deals.
In March 1981, the sale of the subject property was consummated between Woodliff and the Bailey devisees to ICC, pursuant to the option contract. The sale price was $849,000.00 or $3.00 per square foot. No commission was paid to the Bailey Company. Included in the option agreement was a clause which stated:
The parties recognize that negotiations for this option originated between Charles Gibson and George F. Woodliff, neither of whom claims a commission, and buyer agrees to indemnify sellers from any and all claims for real estate commissions by others of whom any of buyers has knowledge.
Gibson stated in his deposition that he first became aware of the subject property in 1970 through his association with Woodliff. Woodliff and Gibson previously were associated together in a law firm. Gibson also stated that he knew Woodliff and Bailey owned the property together. According to Bailey, Woodliff felt that he had negotiated the sale with Gibson alone, and as such didn't owe anyone a commission.
In June of 1982, Gore returned to work with Arthur Smith who was now doing business as the Vantage Corporation. According to Gore, Gore was in periodic contact with Smith regarding the subject property even though he no longer worked for Smith.
When Smith and Gore discovered the property had been sold to a partnership which included their client Anderson, Smith, as broker, brought suit to recover his half of the promised commission.

PROCEDURE
To facilitate understanding of this case, it is desirable that the procedural aspects be divided into three parts, (1) the chancery suit, (2) the circuit suit, and (3) the consolidated suit.

(1)
Arthur Smith, appellant, secured an attorney to file suit to recover his alleged commission. It is needful to say that the first attorney employed is not Smith's present attorney. The first attorney filed on July 15, 1981 a bill for discovery in the Chancery Court of the First Judicial District of Hinds County naming Arthur Smith, d/b/a Real Estate One, Inc. as complainant and H.C. Bailey Company, a corporation, as defendant. This suit sought discovery of the Bailey Company of documents relating to the Bailey devisees/Woodliff sale to ICC. The filing date of this lawsuit procedurally placed the suit under the former rules of civil procedure.
This lawsuit lay dormant for some time.

(2)
Having no results with the first attorney, Arthur Smith secured his present counsel to represent his interests. The new counsel had no knowledge of the filing of the first lawsuit in chancery; therefore, the attorney proceeded to file on January 19, 1982 in the Circuit Court of Hinds County in cause No. 28,270 a suit for breach of contract against (1) the corporation H.C. Bailey Companies (the listing broker), (2) the H.C. Bailey devisees (sellers of a one-half undivided interest in the real estate), (3) the Bailey Company, Ltd., a Mississippi general partnership, and (4) George F. Woodliff (seller of the remaining one-half undivided interest in the realty). The suit *229 sought judgment of $25,470.00 as actual damages for breach of the real estate contract plus interest and $100,000 punitive damages for willful, wanton, and deliberate breach of contract. The contract relied upon by Smith was the letter from W.C. Bailey, Vice President of H.C. Bailey Companies.
On March 3, 1982, Woodliff filed an answer denying any cause of action against him, denying a listing of the property with Smith or Bailey, and pleading the statute of frauds.
Following Woodliff's pleading, the Bailey interests filed on March 5, 1982 a third party complaint joining ICC Development Company, a Mississippi partnership, as a third party defendant.[2] The factual basis for joining ICC as a third party was the clause in the option contract between ICC, the Baileys and Woodliff requiring ICC to defend and indemnify the Baileys and Woodliff in the event a commission was claimed. The pertinent language of the option provides:
The parties recognize that negotiations for this option originated between Charles Gibson and George F. Woodliff, neither of whom claims a commission, and Buyer agrees to indemnify Sellers from any and all claims for real estate commissions by others of whom any of Buyers has knowledge.
Arthur Smith's present attorney realized the existence of the chancery bill of discovery suit when it was transferred by the chancellor over his objection to Circuit Court on February 25, 1982, becoming cause No. 28,414 on the circuit court docket. Smith's attorney immediately moved to voluntarily dismiss under Rule 41(a)(2) the circuit suit No. 28,270 in order to proceed in the transferred chancery suit No. 28,414, filed under the old procedural rules.
However, before the motion to dismiss was ruled upon, the Baileys and ICC moved to consolidate the two circuit court suits. See Rule 42(a), MRCP. On May 21, 1982, Woodliff moved for summary judgment with supporting affidavits, and secured a hearing on his summary judgment motion. Ten days later on May 31, 1982, the circuit court granted summary judgment in favor of Woodliff and dismissed with prejudice Smith's breach of contract claim against Woodliff.
The record reflects that the Circuit Court on July 14, 1982 affirmatively acted to consolidate both circuit suits, No. 28,270 (breach of contract suit) and No. 28,414 (bill of discovery suit) and denied the plaintiff's request for a voluntary dismissal in No. 28,270.

(3)
Having now consolidated the causes of action, the circuit court then proceeded to determine the issues between the remaining parties, under the procedural rules of the new Mississippi Rules of Civil Procedure over Smith's objection. The remaining defendants moved for and were granted summary judgment. The plaintiff Smith moved for a partial summary judgment, which motion was denied.
Although two separate appeals were taken to this Court, from each of the cases below, the issues are so interrelated and inseparable that both appeals are addressed in this one opinion.

APPLICABLE LAW

I.
The first assigned error seeks to establish that the circuit court should have permitted appellant to take a voluntary dismissal of his breach of contract suit, which suit was filed under MRCP effective January 1, 1982 in order to proceed under the *230 bill of discovery suit with the earlier filing date under the former procedural rules.
Having filed this motion in the breach of contract suit with new procedural rules applicable, this question is controlled by Rule 41(a)(1) and (2) as follows:
(a) Voluntary Dismissal: Effect Thereof.
(1) By Plaintiff; By Stipulation. Subject to the provisions of Rule 66, or of any statute of the State of Mississippi, and upon payment of all costs, an action may be dismissed by the plaintiff without order of Court:
(i) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs; or
(ii) by filing a stipulation of dismissal signed by all parties who have appeared in the action.
Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice.
(2) By Order of Court. Except as provided in paragraph (a)(1) of this rule, an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper. If a counterclaim has been pleaded by a defendant prior to the service upon him of the plaintiff's motion to dismiss, the action may be dismissed but the counterclaim shall remain pending for adjudication by the court. Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice.
Under Rule 41(a)(2) a motion for dismissal is addressed to the sound discretion of the trial court, and we have authority to reverse only where there has been an abuse of that judicial discretion. Clearly Rule 41 establishes a uniform rule regarding voluntary and involuntary actions and is a departure from former practice.
The trial court's decision in disposition of a motion for voluntary dismissal must consider the effect that the action will have upon the defendants and other plaintiffs, if any, and must insure fairness and protection for them. Generally, a voluntary dismissal should be permitted unless such prejudice will occur, other than the prospect of another lawsuit, since a dismissal under Rule 41(a) is without prejudice, unless the order states otherwise. Holiday Queen Land Corporation v. Baker, 489 F.2d 1031 (5th Cir.1974); 9 C. Wright & A. Miller, Federal Practice & Procedure § 2364 (1973).
Applying this rule to the case before us, the Court notes that the docket reflects that defendant Woodliff had filed an answer, and that Bailey had filed a third party complaint bringing ICC into the suit as a party. The asserted purpose of the plaintiff's dismissal motion was to obtain the advantage of the earlier filing date of the discovery suit. That earlier filing date would have precluded the filing of a third party complaint, an event which had already occurred in this suit. The granting of a dismissal at this point would have prejudiced the Baileys' third party complaint. This was a substantial right of Baileys to prevent a nonjoinder of all parties in this action and to eliminate a duplicity of lawsuits. The refusal to dismiss by the trial court was an exercise in protection of the Baileys' rights and therefore, not an abuse of discretion. This Court finds no merit in this assignment.
Further, the breach of contract action in circuit court had the potential for achieving a final adjudication of all issues between the parties. The discovery suit brought in chancery court, however, was limited in what it would achieve and would have required the filing of a second lawsuit before the controversy between these parties could be laid to rest. Because there was not another action pending which had the potential for yielding a final adjudication of all issues between the parties, the circuit judge was within his discretion in refusing to dismiss the breach of contract action without prejudice.
And now, having determined that the trial court's decision was proper, in its refusal to dismiss, this Court addresses *231 whether the trial court was correct in proceeding under the new Mississippi Rules of Civil Procedure. The appellant's position is that when the two suits (bill of discovery and breach of contract) were consolidated, the earlier filing date of July 15, 1981, should have controlled and, therefore, the former procedural rules applied.
It appears that the threshold question is whether consolidation was proper, and this question must be answered affirmatively.
In the case of Vicksburg Chemical Co. v. Thornell, 355 So.2d 299 (Miss. 1978), this Court stated:
The rule established in this jurisdiction is "whether a consolidation should be ordered is within the sound discretion of the trial court," and "consolidation of actions in proper cases serves many sound purposes and should be liberally construed. The object is to avoid a multiplicity of suits, to prevent delay, to clear congested dockets, to simplify the work of the trial court and to save numerous costs and expenses." See Stoner v. Colvin, 236 Miss. 736, 110 So.2d 920 (1959); Gwin v. Fountain, 159 Miss. 619, 126 So. 18 (1930); Plainters Oil Mill v. Yazoo and M.V.R. Co., 153 Miss. 712, 121 So. 138 (1929).
This same approach has been incorporated into our new rules of civil procedure. Rule 42(a), MRCP.
It is important to keep in mind that consolidated actions never lose their identity as separate actions. Pre-trial and trial proceedings may take place together but when this is done the legal effect thereof is that each proceeding took place in each action. Consolidation in no way dispenses with the need for separate pleadings or, most importantly, separate final judgments. See V. Griffith, Mississippi Chancery Practice § 506 (2d ed. 1950); Elliott v. Harrigill, 241 Miss. 877, 882, 133 So.2d 612 (1961); Stoner v. Colvin, 236 Miss. 736, 110 So.2d 920 (1959). That consolidated actions maintain their identities as separate and distinct actions is made clear by the fact that they may be unconsolidated. Merchants & Manufacturers Bank v. State, 200 Miss. 291, 309, 25 So.2d 585, 590 (1946).
In this view we hold that all proceedings with reference to the breach of contract action in circuit court, No. 28,270, are subject to and governed by the Mississippi Rules of Civil Procedure. All proceedings in the discovery suit in chancery, No. 28,414 were necessarily had under those rules of procedure in effect prior to January 1, 1982. Holland v. Kennedy, 454 So.2d 1305 (Miss. 1984); Litten v. Grenada County, 437 So.2d 387 (Miss. 1983). Thus, while we find no abuse of discretion on the part of the trial judge in consolidating these cases, nothing in the consolidation order had the effect of making the breach of contract action a pre-rules case nor making the discovery suit a post-rules case.

II.
The issue next addressed by the plaintiff/appellant is the granting of summary judgment in favor of George F. Woodliff under Rule 56(b) MRCP. Woodliff was first granted summary judgment in the breach of contract suit and later in the discovery suit. We shall address the breach of contract suit first.
The summary judgment rule 56, in pertinent part states:
(b) For Defending Party. A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof.
(c) Motion and Proceedings Thereon. The motion shall be served at least ten days before the time fixed for the hearing. The adverse party prior to the day of the hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment *232 as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone, although there is a genuine issue as to the amount of damages.
... .
(e) Form of Affidavits; Further Testimony; Defense Required. Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matter stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.
(f) When Affidavits are Unavailable. Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such order as is just.
Interpretation of this rule has been set forth in detail in Brown v. Credit Center, Inc., 444 So.2d 358, 364 (Miss. 1983) where a mere denial of the material contained in the motion for summary judgment without supporting affidavits was held to be insufficient to create an issue of fact.
The chronological sequence of the present suit shows Woodliff's answer and defense to the January 19, 1982 circuit court breach of contract suit to have been filed on March 3, 1982. Between March 3, 1982 and May 5, 1982, many pleadings were filed  third party complaint, notices of depositions of H.C. Bailey Companies and W.C. Bailey, motions to compel discovery, motion for protective order by H.C. Bailey Co., plaintiff's motion for a voluntary non-suit, motions to dismiss, motion to consolidate, etc.
On May 21, 1982 Woodliff moved for summary judgment with his supporting affidavit and gave the ten day notice for its hearing. On May 24, 1982 the plaintiff Smith filed an unsworn objection to the hearing on the summary judgment motion stating, among other grounds, that the plaintiff had not had the benefit of the discovery procedures to develop the facts essential to justify his position. Additionally, discovery had been delayed because of the illness of ICC's attorney, Jimmie Reynolds. The court, however, refused to continue the hearing, and on the basis of Woodliff's sworn motion and Smith's unsworn objection, the court granted summary judgment to Woodliff and dismissed him "with prejudice" as defendant.
Applying these facts to the requirements of Rule 56(f), plaintiff Smith should have filed counter-affidavits in opposition to summary judgment. The rule so requires, and upon such counter-affidavits the trial court could have (1) denied the summary judgment application or (2) ordered a continuance for affidavits, depositions or discovery, or (3) made such order as was just. It is noteworthy that this rule contemplates that completion of discovery in some instances is desirable and necessary before a court can determine that there are no genuine issues as to the material facts.
This Court notes, however, that barely ten days lapsed between the filing of the motion and the order granting summary judgment. The court file reflects support for some of the plaintiff's position by the motions to compel discovery and motion for protective order and the facts supportive of the plaintiff's position were within the defendants' *233 knowledge as supported by the original bill of discovery suit.
Although this Court has not interpreted this portion of Rule 56(f), the Court finds persuasive in its consideration several Federal decisions.
In Smith v. Community Federal Savings & Loan Association of Tupelo, 77 F.R.D. 668 (N.D.Miss. 1977), the defendants moved for summary judgment, alleging that no genuine issue existed as to any material fact and that under the law dismissal was warranted. The plaintiff filed no affidavits in opposition to the motion, nor did plaintiff file an affidavit pursuant to MRCP 56(f) explaining why he was unable to present opposing affidavits. Plaintiff's memorandum in opposition to the motion contained an explanation that he was unable to present evidentiary facts because the facts were in the possession and control of defendant who had blocked discovery through a pending motion for a protective order.
In Smith, the Court there stated in part as follows:
"It is elementary that where the party moving for summary judgment supports his motion with sworn matter ... the opponent bears a burden of presenting affidavits ... to create a genuine dispute of fact." Golden Oil Co. v. Exxon Co., U.S.A., 543 F.2d 548, 551 (5th Cir.1976). When a party does not have possession of facts to oppose the summary judgment motion and wants time to obtain them by discovery or other means, he should file an affidavit pursuant to Fed. R.Civ.P. 56(f). 6 Pt. 2 Moore's Federal Practice, Par. 56.24 at 56-1423 (1976). But there are occasions when the court can overlook the failure of a party to strictly comply with Fed.R.Civ.P. 56(f). Littlejohn v. Shell Oil Co., 483 F.2d 1140, 1145-46 (5th.Cir.1973), cert. denied, 414 U.S. 1116, 94 S.Ct. 849, 38 L.Ed.2d 743 (1974). In Littlejohn, plaintiff's counsel stated in his brief opposing summary judgment his reasons for not submitting opposing affidavits. Commenting on the method used by counsel the court stated:
It is true that this representation was not in affidavit form by plaintiff in person but we think that the written representation by his lawyer, an officer of the court, is in the spirit of Rule 56(f) under the circumstances. Form is not to be exalted over fair procedures.
77 F.R.D. at 670-671. See also Littlejohn v. Shell Oil Co., 483 F.2d 1140 (5th Cir.1973).
Summary judgment is not, however, an automatic sanction for non-compliance with Rule 56(e). A movant must establish the propriety of relief by the strengths of his own showing, not by the defects in his opponent's showing. Even accepting the uncontroverted statements in the defendants' affidavits as true, the defendants were not entitled to judgment as a matter of law.
Jackson v. State of Mississippi, 644 F.2d 1142, 1144 (5th Cir.1981).
Under the facts and circumstances of this case, we hold that the trial judge was hasty in granting summary judgment in favor of Woodliff. While it is true that the non-moving party must be diligent in opposing summary judgment, Bourn v. Tomlinson Interests, Inc., 456 So.2d 747, 749 (Miss. 1984), he must be given a fair opportunity to be diligent. The proceedings on plaintiff's January 13, 1983 motion to reconsider drives home the point, for at that point in time the deposition of W.C. Bailey was available and it appears that discovery had been completed.
Secondly, as to the granting of summary judgment to Woodliff in the discovery suit, this Court holds that such should not have been granted. The discovery suit was a pre-rules case when summary judgment was not a part of our civil procedure. The consolidation of the cases did not destroy their separate identities. Griffith, supra, § 506, at 516. Summary judgment being unknown to our former procedure, reversal of the judgment there is required. Holland v. Kennedy, 454 So.2d 1305 (Miss. 1984); Litten v. Grenada County, 437 So.2d 387 (Miss. 1983).
*234 In the deposition of W.C. Bailey dated December 2, 1982, W.C. Bailey testified that H.C. Bailey Company had an oral open real estate listing contract with Woodliff to sell and market his interest in the subject property and that Woodliff agreed to Bailey's writing the letter which is the basis of this lawsuit. It was also Bailey's testimony that since the listing was "open", Woodliff had the right to sell without any commission due to Bailey Company unless there was Bailey Company participation.
Also Bailey testified to his requirement that the option contract contain the indemnification language for his protection due to the Bailey-Gore letter which Bailey wrote.
The plaintiff's reconsideration motion focused on definite disputes, among others, of genuine issues of material facts, such as:
(1) Woodliff's alleged agency agreement and knowledge of the listing of his half interest with H.C. Bailey Company and possible resultant liability for a real estate commission for sale of this realty, if Smith was the procuring cause of the sale.
(2) The Bailey devisees' liability for a real estate commission which accrued during the lifetime of their testator on sale of this property, if any, if Smith was the procuring cause of the sale.
(3) The liability of ICC in their execution of the option agreement to indemnify the sellers (Bailey and Woodliff) if any commission is due Smith as procuring cause of sale.
(4) The availability of the courts of Mississippi to Arthur Smith, d/b/a Real Estate One when it allegedly was disqualified from doing business as properly licensed by the Mississippi Real Estate Commission. (This issue is not fully addressed in this opinion, but the record reflects a genuine dispute).
(5) The person who was the procuring cause of the real estate transaction involved here, whether Smith or Woodliff.
(6) Whether or not ICC Development Company is the same purchaser as "Mr. Lomax Anderson of Inverness Construction Company" or if Lomax Anderson is one associated with ICC.
In summarizing this entire lengthy procedure, this Court holds that the first motion for summary judgment was prematurely granted. One of our reasons for so holding is to discourage the practice of parties resisting discovery on the one hand and moving for summary judgment on the other.
Considering all of the affidavits, depositions, answers to interrogatories and as otherwise provided by Rule 56, MRCP, we hold that summary judgment was erroneously granted. With this analysis of the record, this Court concludes that the sworn statements above, viewed in light of the Brown v. Credit Center standard, was sufficient to create a genuine issue as to whether an oral contract existed under which Smith as alleged procuring agent had earned a commission for finding and bringing the buyer and seller together. Whether Smith was in fact the procuring cause in producing the result for which he seeks compensation depends on the particular facts and circumstances of each case and is to be resolved by the trier of facts. Hill v. Capps, 248 Miss. 601, 160 So.2d 186 (1964); Restatement, Agency 2d, § 448; 12 Am.Jur.2d, Brokers, § 190, 191. The former summary judgment should have been set aside and the motion to reconsider granted. Brown v. Credit Center, supra. Summary judgment is not a substitute for a trial on disputed fact issues; it permits a court to render judgment on the law when no disputed facts are found to exist. The Court is not the factfinder on summary judgment, but may only determine if issues are to be tried. Rule 56, MRCP.
This Court needs to address an issue raised by Woodliff. Woodliff's answer presented the statute of frauds as a bar to this action as a matter of law since the alleged contract was an oral listing, not a written contract. This argument was resolved in Minter v. Hart, 208 So.2d 169 (Miss. 1968) and Hill v. Capps, 248 Miss. *235 601, 160 So.2d 186 (1964). The further argument that it was an agreement which is not to be performed within the space of fifteen months from the execution is answered in Morgan v. Jackson Ready-Mix Concrete, 247 Miss. 863, 157 So.2d 772 (1963), United States Finance Co., Inc. v. Barber, 247 Miss 800, 157 So.2d 394 (1963). Also see Jefcoat v. Singer Housing Co., 619 F.2d 539 (5th Cir.1980).
It is further contended by Woodliff that summary judgment in his favor was proper in light of the agreement of the purchaser ICC to indemnify Woodliff and the Baileys from any claims by others for real estate commissions. The fact of this written indemnification agreement is undisputed. However, the law requires one seeking indemnity to first prove actual legal liability to the party injured. Southwest Mississippi Elec. Power Ass'n v. Harragill, 254 Miss. 460, 182 So.2d 220, 223 (1966); 42 C.J.S., Indemnity § 25 (1944). Accordingly, the liability of ICC as indemnitor under the agreement arises only upon adjudication of Smith's claim against Woodliff and does not provide a basis for granting summary judgment.
The summary judgment in favor of George F. Woodliff is set aside.

III.
All of the Bailey devisees and the Bailey Company have asserted the same argument with reference to summary judgment. That analysis regarding Woodliff's position is applicable to the position of the Baileys and is adopted here with reference to them.

IV.
Additionally, the Woodliff and Bailey position challenge this suit on the basis of termination of any agency relationship by death of a principal, H.C. Bailey, Sr.
The agency agreement between H.C. Bailey Company, Johnny Gore, and Real Estate One was dated October 24, 1978. H.C. Bailey Sr. and George F. Woodliff were tenants in common at that time, and a disputed issue here is the authority of the Bailey Company to list the realty on their behalf. Assuming for the sake of the plaintiff's position that such authority existed, the defendants/appellees contend that the agency relationship terminated on April 27, 1980, with H.C. Bailey, Sr.'s death. The contact between Anderson and Gore with the Bailey Company had been made prior to the co-principal's death; the option was executed on July 10, 1980; and the sale was consummated March 16, 1981.
Here we have an alleged listing agent (the Bailey Company) who through an alleged procuring agent (Smith) introduced an individual (Anderson) to the owner or owners. A letter evidencing that procurement was delivered the alleged procuring agent by the alleged listing agent and was delivered allegedly with the consent of the owners in the lifetime of both of them. It is contended by the alleged procuring agent that the letter contains all the contract terms and that all conditions precedent to entitlement to a commission were performed by the introduction of the parties if, in fact, a sale was subsequently consummated. Since the act of procurement occurred during the life of the joint principals, appellant contends that the commission is due although the sale occurred after the death of one joint principal.
A real estate listing creates an agency relationship between the broker and the owner. Charles V. Webster Real Estate v. Rickard, 21 Cal. App.3d 612, 98 Cal. Rptr. 559 (1972); Shoebridge v. Will C. Hartwell Realty and Insurance Company, 244 Miss. 630, 141 So.2d 558 (1962); Russell v. Johnson, 126 Miss. 896, 89 So. 773 (1921). As such, this agency relationship is personal and fiduciary, and being so, the broker's agency terminates by the death of an agent or principal or revocation of a principal unless coupled with an interest in the subject matter. Webster Real Estate, supra. 12 C.J.S. Brokers § 16 (1980), 3 Am.Jur.2d Agency § 51 (1962). Our case law is in accord with these general principles as stated in Clayton, Adm'r. v. Merrett, 52 Miss. 353 (1876).

*236 The overwhelming weight of authority is to the effect that the death of the principal operates as an instantaneous revocation of the agency where it is a naked power, unaccompanied with an interest, and that every act of the agent thereafter performed is null so far as the estate of the principal is concerned.
52 Miss. at 358. See also Restatement (Second) of Agency, § 120, comment a (1958).
Appellant's contention here recognizes this principle, but asserts that the entitlement to commission arose prior to Bailey's death and was ratified subsequent to his death by the devisees with seeming approval and within a reasonable time. Restatement (Second) of Agency, § 446 C and D (1958). These matters present fact disputes to be resolved by the triers of fact.

V.
The above discussion leads this Court to conclude that there were genuine issues as to material facts as to all defendants, including ICC, requiring a reversal of the summary judgments against all defendants. This case is reversed and remanded to the circuit court for retrial as one lawsuit under the new Mississippi Rules of Civil Procedure in the consolidated lawsuit consistent with this opinion.
REVERSED AND REMANDED FOR TRIAL.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, ROBERTSON, and SULLIVAN, JJ., concur.
DAN M. LEE and ANDERSON, JJ., not participating.
NOTES
[1] In his deposition, Bailey stated that the listing was "open", though Gore assumed Bailey was the exclusive agent for the sale of the property. No evidence was supplied that indicated Bailey had any but an oral listing agreement from the owners of the property.
[2] The Mississippi Rules of Civil Procedure effective January 1, 1982 were applicable to this circuit lawsuit, and as of the filing of this third party complaint on March 5, 1982, the then-existent Rule 14, third-party practice, was in full force and effect permitting this procedure. The Mississippi Rules of Civil Procedure effective January 1, 1982, were amended deleting the entire text of Rule 14, effective May 1, 1982, in addition to a substitution on Rule 4, Process, also effective May 1, 1982.