502 So.2d 1188 (1987)
Mary Lee SHEPHERD, et al.
v.
DELTA MEDICAL CENTER, et al.
No. 55461.
Supreme Court of Mississippi.
February 4, 1987.
Rehearing Denied March 11, 1987.
*1189 Johnnie E. Walls, Jr., Walls, Buck & Irving, Greenville, for appellant.
L. Carl Hagwood, Campbell & DeLong, Greenville, James E. Upshaw, Tommie G. Williams, Lonnie D. Bailey, Upshaw & Ladner, Greenwood, for appellee.
Before HAWKINS, DAN M. LEE and ANDERSON, JJ.
ANDERSON, Justice, for the Court:
The appeal now before us grew out of an appalling tragedy. On July 3, 1982, Larry Donnell Shepherd, a 17-year-old boy in good health, was injured when his eye was struck by a nail he had been hammering. He was quickly taken to the emergency room of Delta Medical Center in Greenville. There he was examined by co-defendant Dr. Robert Suares, who determined that the cornea and retina of Shepherd's left eye were badly damaged, and that emergency surgery was necessary to avert loss of sight. The surgery began at about midnight on July 3/4 and lasted well into the morning. It was completed without apparent incident, and Shepherd was taken to the recovery room. Very soon after his arrival there, it became evident that he had gone into cardiac arrest. Doctors and nurses were summoned, and emergency resuscitation was begun. After laboring for an hour and a half, the team succeeded in re-establishing a heartbeat. By that time, however, Shepherd's brain had been deprived of oxygen for a considerable period, and the damage was severe. Shepherd never regained consciousness, and died in the hospital on August 4, 1982. A neurologist had determined that he was "brain dead" several days before his heart actually stopped. At trial, there was testimony that the cardiac arrest was caused by an anaphylactic shock reaction to the antibiotic drug Keflin, which was administered at or near the close of the surgery.
Larry Shepherd's mother, Mary Lee Shepherd, and the other appellants in the present case filed a complaint in wrongful death against Delta Medical Center and numerous individual defendants, alleging that Shepherd's death resulted from negligence on the part of hospital personnel in failing to provide adequate post-operative care.
When the case came to trial, the plaintiffs presented only one medical expert  Dr. John Adriani. Upon the close of voir dire, the trial judge ruled that Dr. Adriani had not demonstrated sufficient knowledge of the local standard of care for doctors then prevailing under King v. Murphy, 424 So.2d 547 (Miss. 1982). He therefore excluded Dr. Adriani's testimony. Realizing that without expert medical testimony they had no case, plaintiffs' counsel moved for a voluntary dismissal without prejudice under Rule 41(a)(2), Mississippi Rules of Civil Procedure, so that they could obtain another expert and start over. The trial judge denied this motion without comment. The inevitable result was that, on defense motion, the court directed a verdict for all the defendants. The appeal of that ruling is now before us.

LAW
It is obvious from the record that Dr. Adriani is an anesthesiologist of very great distinction.[1] Nonetheless, his testimony was excluded  a casualty of the traditional *1190 "locality rule". Under that rule, as modified by this Court in King v. Murphy, supra:
[t]he standard of care by which the acts or omissions of physicians, surgeons, or specialists were [to be judged was to] be that degree of care, skill and diligence practiced by reasonably careful, skilful and prudent practioners in such field of practice or specialty in this state, and for a reasonable distance adjacent to state boundaries. An expert witness who [was] knowledgeable of and familiar with the statewide standard of care [was not to] have his testimony excluded on the grounds that he [did] not practice in this state.
424 So.2d at 550.
Were the same question to be posed today, the ruling would surely be different. Since the case at bar was tried, this Court has brought about a revolution in the standards governing malpractice actions. In the second case of Hall v. Hilbun, 466 So.2d 856 (Miss. 1985), we effectively did away with the locality rule. After an extended consideration of the issues involved, we gave this description of the physician's duty of care:
Given the circumstances of each patient, each physician has a duty to use his or her knowledge and therewith treat ... each patient with such reasonable diligence, competence, and prudence as practiced by minimally competent physicians in the same speciality or general field of practice ... throughout the United States who have available to them the same general facilities, services, equipment and options.
466 So.2d at 873.
Moreover, the language used in Hall indicates that even under King v. Murphy standard, Dr. Adriani's testimony should have been admissible, since the "reasonable distance adjacent to state boundaries" we spoke of in King, "necessarily includes Memphis, Mobile and New Orleans at the very least." Hall, 466 So.2d at 873. (Emphasis added.)
Because the appellants failed to make a formal proffer of Dr. Adriani's testimony, the appellees claim that any appeal of its exclusion is barred under our holding in Martin v. Gill, 182 Miss. 810, 814-15, 181 So. 849, 850 (1938). The briefs contain involved discussions of whether the pleadings and interrogatories sufficed to place the substance of Dr. Adriani's testimony "in the record" in the sense necessary to preserve the issue for appeal.
It is not necessary for us to enter this labyrinth. The refusal of the trial judge to grant a voluntary dismissal without prejudice furnishes us with an independent basis for reversal.
Rule 41(a)(2), Mississippi Rules of Civil Procedure, states:
Except as provided in paragraph (a)(1) of this rule, an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper... . Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice.
The comment to the rule states:
The purpose of Rule 41(a)(2) is primarily to prevent voluntary dismissal which unfairly affects the other side and to permit the imposition of curative conditions. Accordingly, the dismissal should be allowed generally unless the defendant will suffer some plain legal prejudice, other than the mere prospect of another lawsuit. It is not a bar to dismissal that plaintiff may obtain some tactical advantage thereby.
Our leading case on Rule 41(a)(2) dismissals is Smith v. H.C. Bailey Co., 477 So.2d 224 (Miss. 1985). In Smith, a plaintiff filed two separate actions, the first under the old common-law rule and the second under the new Mississippi Rules of Civil Procedure. The second suit was apparently filed during the brief life of our first Rule 14 allowing third party practice, for a third party complaint was filed in the action. (Under the old common-law rules, of course, third party practice was not known in Mississippi.) The plaintiff sought a voluntary *1191 dismissal under Rule 41(a)(2) so that all the issues could be tried in the earlier action, thus avoiding the third party complaint. This Court refused to allow it.
Our discussion of the considerations affecting a Rule 41(a)(2) motion was very general. The overall rule was stated thus:
[A] motion for dismissal is addressed to the sound discretion of the trial court and we have authority to reverse only where there has been an abuse of that judicial discretion.
(477 So.2d at 230).
The opinion went on to discuss the factors affecting such a decision. We said:
The trial court's decision and disposition of a motion for voluntary dismissal must consider the effect the action will have on the defendants and other plaintiffs, if any, and must assure fairness and protection for them. Generally, a voluntary dismissal should be permitted unless such prejudice will occur, other than the prospect of another lawsuit, since a dismissal under Rule 41(a) is without prejudice unless the order states otherwise.
(477 So.2d at 230).
Since in Smith, the granting of the voluntary dismissal would have prejudiced the rights of a third party complainant, we held that the denial of it had been perfectly proper.
Obviously, any prejudice to the defendant will increase in proportion to the advancement of the litigation. Thus, the farther the litigation has progressed, the more likely a court is to look upon such request with disfavor. Courts also consider the expenses and other inconveniences incurred by the defense in the trial so far. In numerous cases cited by the appellees, such factors influence the courts in their determination that the granting of a voluntary dismissal without prejudice was improper. See e.g., Ferguson v. Eakle, 492 F.2d 26 (3d Cir.1974) (cost to defendant must be considered); Paturzo v. Home Life Ins. Co., 503 F.2d 333, 336 (4th Cir.1974) (no involuntary dismissal when trial underway) Shaffer v. Evans, 263 F.2d 134, 135 (10th Cir.1958) (no involuntary dismissal when case ready to be tried); Ockert v. Union Barge Line, Inc. 190 F.2d 303, 305 (3rd Cir.1951) (no involuntary dismissal when trial underway); Thomas v. Amerada Hess Corp., 393 F. Supp. 58, 70 (E.D.Pa. 1975) (expense to defendants a factor to be considered).
Some courts have held that the granting of an involuntary dismissal without prejudice is improper when the defendant is entitled to judgment as a matter of law and the motion is made to avert such judgment, e.g. Pace v. Southern Express Co., 409 F.2d 331, 334 (7th Cir.1969) (summary judgment); Evans v. Teche Lines, Inc. 112 F.2d 933, 934 (5th Cir.1940) (no involuntary dismissal to avert directed verdict); Thomas, supra, 393 F. Supp. at 70 (summary judgment).
However, most of those cases cited by the appellees involve some sort of misconduct or other deficiency by the plaintiff. Ferguson v. Eakle, supra, was a fraudulent conveyance case in which the plaintiff sought voluntary dismissal simply because he believed he had a separate action against the broker. Similarly, in Paturzo, supra, the plaintiff announced on the morning of trial that he preferred to try part of his claim in a separate class action filed that morning. In Ockert v. Union Barge Line, supra, the plaintiff's witness was not excluded, but he failed to appear for reasons of his own, sending a note instead. Plaintiff's lawyer did not have him subpoenaed. Many cases cited by appellees involve motions for involuntary dismissal made to avert a summary judgment. By definition a summary judgment against a plaintiff is proper only when the plaintiff has failed to develop any genuine issues of material fact. In S.A. Andies v. Versant Corp., (4th Cir. decided April 22, 1986, not yet reported) the case was far advanced when the plaintiff discovered that his defendants were judgment proof. The Court denied the plaintiff's motion for an involuntary dismissal without prejudice.
Finally, courts usually insist on some explanation for the dismissal, and in some of the cases cited by the appellees, no adequate *1192 explanation was offered. In Shaffer v. Evans, supra, the court denied the plaintiff's motion because "no reason prejudicial to his substantive rights was suggested for dismissal." (263 F.2d at 135) In Pace v. Southern Express Co., supra, the plaintiff failed to file any brief against the summary judgment and gave an insufficient explanation of his motion to dismiss. (409 F.2d at 334). The remarks of the court in Thomas v. Amerada Hess, Corp., supra, are of special interest. There the Court, having stated that the plaintiff's "insufficient explanation for the needed dismissal" was "not the least" consideration affecting the denial of the motion, the court went on to say: "Possible smoother sailing in another venture is insufficient reason for permitting [the plaintiff] to start anew. To the extent that plaintiffs have failed to complete discovery in this action, it is due to their own dilitoriness." (393 F. Supp. at 70). Thus, Thomas, too, stands for the proposition that a motion for voluntary dismissal is more likely to be denied when the plaintiff has been guilty of some shortcoming.
Also of special interest is Evans v. Teche Lines, supra. In that case one of the two witnesses for plaintiff was excluded, for reasons not stated in the opinion. The plaintiff then moved for voluntary dismissal, but the court on denying the motion stated the evidence be excluded witness had no "probative force" as to the decisive issue in the trial. (112 F.2d at 934).
The present case obviously differs from all of these in that the motion for voluntary dismissal was not rendered necessary by any failure or shortcoming of the plaintiffs. It does not appear the plaintiffs delayed the trial or protracted the discovery process in any way. On the contrary, the plaintiffs tried hard to get their expert witness' testimony heard by the jury. More to the point, their belief that his testimony was admissible has since been vindicated by this Court's decision in Hall v. Hilbun. Since the standard of care was undergoing major revision, and the exclusion of the plaintiff's expert evidence was obviously going to be decisive, the equities weighed so heavily in favor of granting the nonsuit that failure to do so constituted an abuse of the trial judge's discretion.
Therefore, the judgment must be reversed, and the cause remanded for a new trial.
REVERSED AND REMANDED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, PRATHER, SULLIVAN and GRIFFIN, JJ., concur.
ROBERTSON, J., not participating.
NOTES
[1] Dr. Adriani taught anesthesiology for 43 years at Charity Hospital in New Orleans (the world's second largest hospital); for 35 years he was head of the anesthesiology department at Charity Hospital; he has served on the staffs of LSU and Tulane; he has served 12 years on the certifying board for anesthesiology, including one year as president; he received from Columbia University, his alma mater, a gold medal for his contribution to medicine; he received the Ralph Watters Award, the Noble Prize of anesthesiology; he has published some 600 articles and 13 books in the field.