I respectfully dissent. In its complaint, MST alleged that Mississippi Chemical Corporation (MCC) fraudulently appropriated its plans for constructing a paper mill. For several years, MST had consulted with a corporation named Committee for North Central Mississippi Paper Mill, Inc. (The Committee), concerning the construction of a newsprint paper mill in Grenada, Mississippi. Several members of the Committee were also officers or shareholders of MCC. The Committee eventually persuaded MST that the project was not feasible, but after *Page 306 
MST abandoned its plans, MCC coincidentally proceeded with construction of a newsprint paper mill in Grenada using a concept virtually identical to that proposed by MST. The two projects shared, among other things, the same product, the same production process, the same market and market method, the same location, the same bank and bank contact, the same finance method, and the same waste treatment and discharge method. MCC, of course, claims that the paper mill it constructed bears no relationship to the one envisioned in MST's plans. The trial court granted summary judgment in favor of MCC, finding that MST had failed to rebut the affidavits MCC offered in conjunction with its 12(b)(6) motion. The trial court's finding is ironic, considering that MST was precluded by virtue of a protective order from the outset of the litigation from discovering evidence with which to support its claims. In my view, the trial court erred in granting summary judgment without first allowing MST an adequate opportunity to gather evidence.
The majority first holds that MST waived its argument concerning inadequate opportunity for discovery by not raising the issue prior to its petition for rehearing. In so holding, the majority forgets the posture in which this case comes before us. MST appeals from a grant of summary judgment, not from a judgment entered after a full trial on the merits. When reviewing grants of summary judgment, this Court applies a de novo standard of review. See Short v. Columbus Rubber and Gasket Co.,535 So.2d 61, 63 (Miss. 1988); Smith v. H.C. Bailey Co., 477 So.2d 224, 233 (Miss. 1985). "De novo," according to Black's Law Dictionary at 483 (4th ed. 1968), means "anew; afresh; a second time." In order to consider a case de novo, therefore, this Court approaches the case as if it were a trial court hearing the matter for the first time. Since this Court's de novo review of summary judgment is, in essence, a repeat of the trial court's assessment, then this Court's ruling in such cases is the equivalent of a trial court judgment. The only real difference is that a party has a right to appeal from an actual trial court judgment but not from ours.
Carrying this line of reasoning one step further uncovers the hole in the majority's "waiver" rationale. Since this Court's de novo ruling in an appeal from summary judgment is the equivalent of a trial court judgment, then a petition for rehearing in such a case necessarily parallels a motion for reconsideration following a grant of summary judgment in a trial court. In motions for reconsideration of summary judgment, parties are permitted (and often do) raise arguments which extend beyond the scope of matters covered in the original summary judgment hearing. If a party could raise the inadequacy of opportunity for discovery for the first time in a motion for reconsideration, there is no principled reason why — in a summary judgment context — he should be barred from doing so on a petition for rehearing in this Court. For this reason, I dissent from the majority's conclusion that MST waived its discovery argument by not asserting it in its original appellate brief.
In any event, one can say that MST did in fact raise the discovery issue on their original appeal, albeit tangentially. MST framed a general issue concerning the continuing existence of a genuine issue of material fact, and it is clear, even from the facts presented in MST's original appellate brief, that the information supplied to MST by MCC was inadequate to establish grounds for a grant of summary judgment.
Upon reaching the merits of MST's discovery issue, it becomes abundantly clear that MST is entitled to prevail. In light of the majority's decision, we shall never know whether MST's claim against MCC is grounded in fact. Much of the information which would resolve the case one way or the other remains secure and unreachable in MCC's hands, protected by the trial court's order precluding discovery. Along with its 12(b)(6) motion, MCC filed a Motion to Stay Discovery which the trial court granted. In Mississippi, we have an archaic rule of ethics which precludes a lawyer from talking with the employees of a defendant. SeeNetterville v. Mississippi State Bar, 397 So.2d 878 (Miss. 1981); Miss.R.Professional Conduct, Rule 4.2. *Page 307 
Following the grant of MCC's Motion to Stay, therefore, MST's only source of information concerning MCC's activities was cut off. In consequence, MCC was able to avoid either answering any of MST's discovery requests or filing an answer to MST's complaint while at the same time selectively using its own documents to support its motion for dismissal. Of particular importance to MST's claim were MCC's corporate minutes. MST contends that the Committee for North Central Mississippi Paper Mill, Inc., the corporation with which MST jointly developed its paper mill plans, was actually no more than a front through which MCC stole MST ideas. If MST's claim is true, then it is possible that the MCC corporate minutes might contain some clues. Rosalyn B. Glascoe, corporate secretary for MCC, averred in her affidavit that the minutes contained only three passing references to the MST/Committee for North Central Mississippi Paper Mill project. She attached "relevant parts of said corporate minutes" to her affidavit. Exhibit "A" to the affidavit is a portion of the MCC corporate minutes from May 27, 1980 in which Mr. Owen Cooper
 was called upon to present details concerning the plans and organization for Forest Products Cooperative, which has a goal to negotiate for the construction of a paper mill in Mississippi. The goals and purposes were reviewed [and MCC authorized] a $25,000 loan to Forest Products Cooperative.
Further discussion of the paper mill project was presented to the MCC Board of Directors on March 24, 1981, when "Mr. Cooper presented a brief statement concerning the paper mill project in which he is dominantly involved in developing." Finally, on December 22, 1981, Mr. Cooper made another presentation to the MCC Board of Directors and stated "that the objective of this presentation to MCC's Executive Committee is to seek involvement by MCC in this project." Also on December 22, 1981, Cooper presented the executive committee with information concerning
 Status of engineering and construction by Mr. Wilson and Mr. Sherman. Proposed construction contacts, schedules, and tabulation of firm vs. estimated costs were reviewed, along with major equipment suppliers, tabulation of operating profit distribution, and related data.
 Detailed financial data by Mr. [Don R.] Branch for the total project currently estimated to require $283,976,000 in funds. He proposed that MCC and wood farmers form a partnership with MCC's financial participation to be $10 million.
These are the only references to the paper mill project that MCC's corporate secretary deemed sufficiently "relevant" as to warrant disclosure in connection with her affidavit. One might be tempted to wonder, however, how course or how fine was the net of "relevancy" though which MCC's employee filtered the corporate minutes. It is strange, for instance, that the minutes should contain no further mention of the project despite the December 22, 1981 proposal which clearly contemplates further action by the executive committee (particularly when the action involved a potential expenditure of ten million dollars).
It is entirely possible, of course, that MCC's role in the matter was completely innocent; that MCC never used the information provided by Cooper and Branch when developing its own paper mill plans. It is also possible, however, that MST's claims are true. MST should be afforded an opportunity to flesh out its claims through discovery.
In my opinion, it is patently unfair for a trial court to issue an order precluding a party from discovering evidence and to then grant summary judgment against that party for failure to prove its claim. The trial court's action in not requiring answers to be filed to either MST's complaint or to its discovery and in preventing the deposition of MCC's witnesses suggests a feast of "home cooking" of the highest degree. I would reverse the summary judgment against MST and remand for appropriate proceedings including full discovery.
DAN M. LEE, P.J., and SULLIVAN and PITTMAN, JJ., join this opinion. *Page 308