T. J. CLAYTON, Adm'r, vs. G. B. MERRETT et al.

1. AGENCY: *Acts of an agent after the death of his principal.*
The death of the principal operates as an instantaneous revocation of the agency where it is a naked power unaccompanied with an interest, and every act of the agent thereafter performed is void so far as the estate of the principal is concerned.

2. ESTATES OF DECEDENTS: *Statute of limitations. Section 2162 of Code of 1871.*
The general rule is that the statute of limitations will not run against an estate until there is a legal representative qualified, to sue according to the laws of the forum. Section 2162 of the Revised Code permits a suit to be brought after the bar would otherwise have become complete, provided the suit was commenced by the administrator within one year of his qualifications.

APPEAL from the Chancery Court of *Lee* County.

Hon. O. H. WHITFIELD, Chancellor.

The opinion of the court contains a sufficient statement of the case.

The following errors are assigned:

1. The court below erred in sustaining the demurrer.

2. In dismissing the bill.

3. In sustaining the demurrer and dismissing the bill.

4. Same.

5. In not allowing complainant to amend his bill.

*Clayton & Clayton*, for appellant:

The statute of limitations commenced running in April, 1867. See Code of 1871, § 2162, and Code of 1857, art. 18, p. 401; see, also, Code, 1871, § 1189; and Code, 1857, art. 131, p. 457. The note never was under the control of the foreign executor. This bill was filed in less than one year after the letters were granted to complainant. The question in the case is whether a payment made to the agent after the death of his principal, and in ignorance of it, is a valid payment. The death of the principal revokes the power of the agent. 2 Kent, side p. 646; Harper *v.* Little, 2 Greenl., 14–18; Hunt *v.* Rousmanier, 8 Wheat., 174; Hunt *v.* Ennis, 2 Mason, 244; Galt *v.* Gallaway, 4 Pet., 333; Cassidy *v.* McKenzie, 4 Watts & S., 282. When Drane died the authority of

Tucker, Green & Pickens ceased, because they were employed by him.   Gleason *v.* Dodds, 4 Metc., 339, 340, 341.

*J. A. Brown*, on the same side :

1. Except in executing a power coupled with an interest, an agent, after the death of his principal, can do no act in the name of his principal which will be binding in law. Hunt *v.* Rousmanier, 8 Wheat., 174, by C. J. MARSHALL ; Story on Agency (8th ed.), § 490, p. 652.    Both agent and principal were dead before the payment, in the case at bar, and it was made to a sub-agent.    Charleston *v.* Duncan, 3 Bevard, 386 ; 8 Watts & S., 402.    Cassidy *v.* McKenzie, 4 ib., 286, is decided on the ground that " neither the agent nor the debtor had *any opportunity to learn* of the death of the principal."    But in the case at bar the principal died in Alabama fifteen months before payment, before suit was brought for the money, and neither the bill, nor the answer to the cross-bill, in that suit, was sworn to by any one.    In this day of telegraphs and fast mails, where the debtor has so much to put him on inquiry, it is culpable negligence if he remains in ignorance that the estate of his creditor is being administered, for fifteen months, within a hundred miles of him.

2. Our statute of limitations does not run against a foreign administrator.    In Alabama (37 Ala., 522) the statute runs against a foreign administrator, because he can sue there, on his foreign letters alone, without any preliminary steps. Clay's Digest, p. 227, § 31.    But in Mississippi he cannot sue until he has subjected himself to the jurisdiction of one of our chancery courts.    Code, 1871, § 1189.    Where these preliminary steps are required, it is uniformly held that a foreign administrator cannot sue until he has complied with them. Helen Campbell *v.* Wallace, 10 Gray, 162 ;  Story on Conflict of Laws, § 513 ;  Thomson *v.* Wilson, 2 N. H., 292.    And, under statutes like Code, 1871, § 2162, it has been generally held that the limitation does not begin to run until an administrator has been appointed, capable of suing in the

courts of the state where the statute applies.  Galup v. Galup, 11 Metc., 445, by C. J. SHAW; Hubert v. Turnpike Co., 15 Conn., 145 ; Lee v. Ganse, 2 Ired., 447 ; Wyatts v. Rambo, 29 Ala., 510.

3. While the bill is defective in not making the heirs parties, yet the demurrer assigns no such ground.  Generally, in such cases, this court has reversed the decree dismissing the bill, sustained the demurrer, and remanded the case with leave to amend the bill.  Kimbrough v. Curtis, 50 Miss., 122 ; Mitchell v. Shell, 49 ib., 118.

*Green & Pickens,* for appellees :

The note was barred by the statute of six years.  It was dated October 10, 1866, due one day after date.  Six years had expired.  Wiley died April 16, 1868.  The statute began to run before his death.  Abbott v. McElroy, 10 S. & M., 100 ; 12 ib., 9 ; 6 Cush., 144.  See Code of 1871, § 1189, and Code of 1857, art. 131, p. 457 ; Manly's Adm'r v. Turnipseed, 37 Ala., 522 ; Bell's Adm'r v. Nichols, 38 Ala., 678.  Equitable or implied exceptions will not be ingrafted by the courts upon the statute of limitations, and, where the legislature has not made an exception in express terms, the court will not allow it.  Dozier v. Ellis, 6 Cush., 730 ; Smith v. Westmoreland, 12 S. & M., 663 ; Ingraham v. Ragan, 1 Cush., 213 ; 3 ib., 571 ; 13 S. & M., 509 ; 5 Cush., 682 ; 30 Miss., 320 ; 38 ib., 503.

As to the death of the principal, and the acts of his agent thereafter, see Story on Agency, § 492, and notes ; ib., § 488, and we invite special attention to Cassidy v. McKenzie, 4 Watts & S., 282 ; 10 Mull. & W., 1 ; 17 Mo., 234 ; 8 Ohio, 520.

CHALMERS, J., delivered the opinion of the court.

Leroy M. Wiley, a resident of Georgia, intrusted to his agent, James Drane, of Choctaw county, Miss., a note against G. B. & T. D. Merrett, and with it a deed to be delivered to them on payment of the note.  Drane placed the note in the hands of Tucker & Green, attorneys, for collection.  The attorneys filed a bill and obtained decree for sale of the land, and the

same was sold by the commissioner appointed for that purpose by the chancery court. The Merretts bought at the sale, paid the purchase money directly to the attorneys, Tucker & Green, and withdrew the deed, which had been previously tendered and filed with the bill, and had the same recorded. James Drane having died during the pendency of the suit, Tucker & Green paid over the money which they received to his executrix.

.After all these transactions had occurred, it was discovered for the first time that Leroy M. Wiley had died before the institution of the suit in his name, and nearly two years before the payment of the money.

Sometime thereafter appellant, Clayton, administered upon his estate in this state (where the deceased owned other claims and owed some debts), and filed his bill against the Merretts to compel them to pay again the amount due on the land. The bill sets forth the above facts, and is aided by an agreement of counsel, in which it is admitted that neither Drane nor Tucker & Green nor the Merretts knew of Wiley's death at the time of payment by the latter.

Two principal points are raised by the demurrer : 1st. The six years statute of limitations. 2d. That the payment, being made in ignorance by all parties of the death of Wiley, is good.

As to the statute of limitations, it appears that the debt was not barred at the time of Wiley's death, and the present suit was brought within one year after the qualification in this state of the administrator, Clayton. It is expressly provided by § 2162, Rev. Code, that in such cases a suit may be brought after the bar would otherwise have become complete, provided such suit was commenced by the administrator within one year of his qualification. It is insisted, however, that this statute does not apply, because the bill shows that an administrator upon Wiley's estate was appointed in the state of Georgia soon after his death, and more than twelve months before the commencement of the present suit. The bill states,

however, that the Georgia administrator had never qualified in this state, by filing a copy of his bond and letters here, or otherwise, and that he had never returned the note in question upon his inventory in Georgia, nor had possession thereof, nor in any manner become liable therefor. Under such circumstances the twelve months statute referred to will only commence to run from the appointment of an administrator here. The general rule seems to be that the statute of limitations will not run against an estate until there is a legal representative thereof, qualified to sue according to the laws of the forum. Gallup v. Gallup, 11 Metc., 445 ; Hobart v. Turnpike Co., 15 Conn., 145 ; Lee v. Ganse, 3 Ired., 447.

Upon the second point it is admitted that the former legal proceedings, having been commenced and prosecuted in Wiley's name after his death, are void, and that the deed abstracted from the papers, and recorded, conveyed no title ; but it is contended that the payment of the money was good, because made in ignorance that the death of the principal had revoked the agency.

There are several cases which seem to hold that although, as a general principle, death revokes an agency and renders null every act of the agent thereafter performed, yet that where a payment has been made in ignorance of the death, such payment will be good.

The leading case so holding is that of Cassidy v. McKenzie, 4 Watts & S., 282, where, in an elaborate opinion, this view is broadly announced. It is referred to, and seems to have been followed, in the case of Dick, Ex'r, v. Page et al., 17 Mo., 234 ; but in this latter case it appeared that the estate of the deceased principal had received the benefit of the money paid, and therefore the representative of the estate might well have been held to be estopped from suing for it again.

It is stated in briefs of counsel that the view under consideration has been adopted by the supreme court of Ohio, but

owing, as we suppose, to an error in the citation of the case we have not been able to find it.

In Stout v. Ilberry, 10 M. & W., 1, a wife purchased provisions on the husband's credit, during his absence, and, as was afterwards developed, after his death. In an action to hold her personally liable for the goods it was held that she originally had full authority to contract the debt in her husband's name; that she was guilty of no wrong and suppressed no information in doing so; that the person supplying her took equally with herself the chance of the continued life of the absent husband; that his death, being the act of God, should work her no harm, and she was therefore acquitted of the debt. It seems to have been conceded that the estate of the husband was not bound, and the result would appear to be that the unfortunate tradesman lost his debt altogether.

These cases, in so far, at least, as they announce the doctrine under discussion, are exceptional. The Pennsylvania case, *supra*, is believed to stand almost, if not quite, alone in announcing the principal in its broadest scope. The overwhelming weight of authority is to the effect that the death of the principal operates as an instantaneous revocation of the agency where it is a naked power, unaccompanied with an interest, and that every act of the agent thereafter performed is null so far as the estate of the principal is concerned. This rule frequently operates very unjustly and produces very great hardship. A party dealing with an insolvent agent, upon the faith of his well-known authority from a wealthy and distant principal, is suddenly confronted with the fact that the authority had ceased, by the death of the principal, one day or perhaps one hour before his transaction occurred. Impressed with the hardship of such a case, the civil law adopts the rule contended for in the case at bar, and renders valid a contract executed or payment made under such circumstances.

The Scotch law is said to be similar. Judge STORY regrets

that this beneficent rule does not prevail under the common law, and insinuates a doubt as to whether that system is altogether liable to the reproach which he seems to think that the opposite doctrine casts upon it. Story on Agency, § 495, and notes. It will be observed, however, that the distinction which he undertakes to draw, in his desire to rid the common law of what he regards as a defect, is only the case of an agency coupled with an interest, as to which it is well settled that the act of the agent, performed in ignorance, and sometimes even with full knowledge, of the death of the principal, is binding.

Several states of the Union, among which are said to be Maryland and Georgia, have by statute adopted the rule of the civil law on this subject. 2 Kent's Com., 646, note.

However wise such legislation may seem to be, and however great the injustice produced in particular cases by the contrary doctrine, undoubtedly the common law rule is that death revokes the agency and nullifies all acts thereafter performed. This doctrine rests upon the obvious principle that as a dead man can do no act for himself, so no man can do an act for him. When, therefore, the agent undertakes to act in his name, he is acting for a being not in existence. To hold his act valid is not to bind the dead man, but to bind his heirs and representatives, who are thus held liable for the acts of one whom they never appointed, and whom perhaps they would be unwilling to trust. Whether a system of jurisprudence which would accomplish this result would be found in the long run less productive of injustice than our present rule may well be doubted. At all events we are satisfied that such is not now the law. Story on Agency, § 488, *et seq.;* 2 Kent's Com. (side page), 646, and authorities cited in notes; Travers *v.* Crane, 15 Cal., 12; Hunt *v.* Rousmanier, 8 Wheat., 174; King *v.* Corp. of Bedford, 6 East, 356; Galt *v.* Gallaway, 4 Pet., 332.

We would remark that the case at bar is not one where the death of the principal occurred within a few hours or days before the payment, but that nearly two years intervened

between the two events. If the principle is the same, it does not, at least, present a case where it was physically impossible for the debtor to know that the power of the agent had been terminated by the death of the principal.

The views of the court below seem not to have been in accordance with the views here announced, and were therefore erroneous. We observe, however, that complainant, Clayton, who is the administrator of Wiley, fails to make the heirs of his intestate defendants to the bill. This should have been done, inasmuch as the legal title to the land was in them.

No objection to this was urged either in the court below or in this court, but the absence of a necessary party renders it impossible to proceed with the bill in its present aspect.

So much of the decree of the court below as sustains the demurrer is, therefore, affirmed; so much of it as dismisses the bill is reversed, and the cause is retained, and remanded with leave to complainant to amend his bill within ninety days, or such further time as to the chancellor may seem proper, not to extend, however, beyond the second term hereafter to be held of the chancery court of Lee county, at which the bill if not amended, shall stand dismissed.