McMILLIN, C.J.,
for the court.
¶ 1. The case before the Court presents the question of the enforceability of a contract for sale of land entered into, but not finally closed, prior to the property owner’s death. Depending on the resolution of that issue, there is a possible second issue involving entitlement to the sales proceeds in light of the particular terms of the deceased property owner’s will relating to the property.
I.
Facts
¶ 2. Nell Anding Pickett was the owner of a tract of approximately 181 acres of land in Hinds County. On September 21, 1999, Pickett entered into a contract for *469 the sale of that property to Bruce Kirkland. Under the terms of the contract, the actual sale was to close on or before December 15, 1999. It should be noted that the contract was executed, not by Pickett personally, but by her nephew, Harold Anding Johnson, acting under authority of a general power of attorney previously executed by Pickett on February 17, 1999. As the case stands before the Court in this appeal, there is no contention that the instrument granting the power of attorney to Johnson was invalid. Neither is there an assertion that the subsequent contract for the sale of the real estate executed by him for Pickett under authority of the power of attorney was ineffective at the time of execution.
¶ 3. After the contract was executed, but before the scheduled closing date, Pickett died. Her will, showing an execution date of March 26,1999, was admitted to probate in the Hinds County Chancery Court. It appointed Johnson as executor of the estate. Under the terms of the will, the 181 acre tract was devised to Kenneth and Betty Pearl Van Etten. Aside from a few additional specific bequests, the remaining bulk of the estate passed under a residuary clause to a number of Pickett’s nieces and nephew, including Johnson, the named executor.
¶ 4. Kirkland, as the purchaser under the sales contract, petitioned the chancellor to require the executor to carry out the terms of the contract. The Van Ettens opposed the motion on the ground that the contract lapsed when December 15, 1999, passed and the contract had not been closed.
¶ 5. The chancellor held that the contract, not being one for personal services, survived the death of the seller. The chancellor also found that, though Pickett’s attorney in fact was- no longer able to perform the contract on her behalf since the power of attorney was automatically revoked by operation of law at the time of Pickett’s death, the contract nevertheless remained enforceable against Pickett’s estate. The chancellor further found as fact that,the purchaser, Kirkland, was ready and able to perform his obligations under the contract and had, in fact, attempted to tender performance in advance of the contract deadline but that the sale was not consummated solely because of problems relating to the-proper probate of Pickett’s will, the result being that there was no representative duly authorized to perform for the estate at the relevant times. In that situation, the chancellor concluded that the contract remained enforceable and directed the executor to carry out the estate’s obligations as seller under the contract.
¶ 6. After the chancellor’s ruling, the Van Ettens filed a pleading alleging an alternative right under the terms of the will. Their alternate claim was essentially that, if the contract was in fact enforceable against the estate, then they were entitled to the sales proceeds on the theory that, upon probate of the will, they became the owners of the tract of the land even though their title was encumbered by the previously-existing contractual obligation to sell the property under the terms of the contract. Therefore, according to their theory, having been devised the land subject to the burden of the contract to sell; they were, by the same token, entitled to the benefits of that contract, i.e., the proceeds of the sale.
¶ 7. The chancellor rejected this alternate claim by the Van Ettens. The chancellor held that Pickett’s act of entering into a contract to sell the land after execution of the will acted as an ademption of the specific devise of the land. The chancellor relied on authority holding that, upon execution of a contract for the sale of *470 the real property, there was an equitable conversion of the property whereby Pickett’s rights became personal property consisting essentially of the right to the proceeds of the sales contract. Thus,' rather than dying possessed of the land encumbered by a contract of sale, Pickett died owning a contractual right to the receipt of a certain sum of money. These sales proceeds were not the subject of a specific bequest under the terms of her will; therefore, the proceeds would pass under the residuary clause of the will rather than under the specific devise provisions to the Van Ettens contained elsewhere in the will.
¶ 8. The parties to this appeal include the Van Ettens as appellants and Kirkland, the purchaser under the contract of sale, as an appellee. Kirkland’s interest is confined to the initial issue raised in the appeal since, if the contract was deemed to have lapsed as the Van Ettens contend, he would be in the position of losing title to the real property. Johnson also appears as an appellee in his capacity as executor of the estate and as a residual beneficiary. Johnson makes common cause with Kirkland in asserting the validity of the land sale pursuant to the contract. His stake in the outcome of the appeal depends additionally on the resolution of the second issue dealing with the proper distribution of the sales proceeds. That interest arises out of the fact that he is one of the residual beneficiaries under the will so that, if the chancellor’s decision is affirmed in this appeal, his proportionate share of the residuary estate will be increased by the inclusion of the land sale proceeds in the residual estate.
II.
Issues Presented and Scope of Review
¶ 9. There appear to be no real disputed issues of fact in this case on the core considerations on which the proper outcome of the case must turn. The key issues presented may be summarized as follows: (a) did the contract lapse when it was not fully executed by the specific closing date of December 15, 1999, and (b) if the contract remained enforceable against the estate, did the contract, entered into prior to Pickett’s death, work an ademption as to the specific devise of that property to the Van Ettens in her previously-executed will even though the sale was not closed prior to her death or, alternatively, was there no ademption since Pickett still owned the property at her death, though her title was burdened by the provisions of the sales contract? The issues for resolution pose pure questions of law. In that situation, an appellate court is under no mandate to afford deference to the trial court’s determinations, but rather undertakes a efe novo review of the issues presented. Saliba v. Saliba, 753 So.2d 1095, 1098(¶ 11) (Miss.2000).
III.
Discussion
¶ 10. We will deal first with the argument that the sale itself was invalid because the contract had lapsed and ceased to be enforceable when the transaction was not completed by the contractually-mandated closing date of December 15, 1999. In considering this issue, we parenthetically observe that the fact the contract of sale was executed, not by Pickett herself, but by Johnson acting under a general power of attorney, has no effect on the resolution of this issue. A power of attorney, depending as it does on the consent of the grantor under the instrument, is can-celled immediately on the death of the grantor so that the attorney in fact has no further authority to act on behalf of the grantor. Clayton v. Merrett, 52 Miss. 353, *471 358 (1876); Restatement (Second) of Agency § 120 (1958). That fact, however, has nothing to do with the continuing validity of acts lawfully undertaken by the attorney in fact at times when he still had the authority to act. Thus, the contract for sale was not rendered void by Pickett’s death, though the fact of her death did render Johnson, in his capacity as her attorney in fact, legally incapable of proceeding to carry out the remaining terms of the contract. The contract, however, remained a binding agreement that could be enforced against Pickett’s estate in the probate proceeding. Miss.Code Ann. § 91-7-221 (Rev.1994).
¶ 11. The chancellor found that Kirkland, in his capacity as purchaser under the contract, was ready and willing to close the sale within the time set out in the contract and had, in fact, attempted to tender performance. However, because of some initial problems in properly opening Pickett’s estate and having a personal representative of the estate duly qualified under applicable law (these difficulties being procedural errors not having any particular relevance to the issues now before us), the estate was not in position to close the transaction on or before December 15, 1999. In that situation, where one party having the right to demand performance stands ready and willing to carry out an executory contract but the other party cannot perform due to a temporary impossibility, the passing of the designated date for performance does not result in voiding the contract. Rather, that event simply extends the time of performance appropriately until the impossibility ceases. Culp v. Tri-County Tractor, Inc., 112 Idaho 894, 736 P.2d 1348, 1354 (1987) (citing Restatement (Second) of Contracts § 269, cmt. a (1981)). If the non-performing party fails to perform after removal of the impossibility, a ready and able purchaser may seek specific performance or such other legal remedy as may appear appropriate in the particular case. O’Sullivan v. Bergenty, 214 Conn. 641, 573 A.2d 729, 734 (1990).
¶ 12. It was in an effort to obtain specific performance that Kirkland filed a petition in the estate proceeding seeking to compel the decedent’s personal representative to carry out the terms of the contract. The only issue raised was the validity of the contract itself and not, assuming the validity of the contract was established, whether specific performance was a proper remedy. The chancellor resolved the question of the validity of the contract in favor of Kirkland and ordered specific performance, which is a particularly appropriate remedy in matters relating to tracts of real property because of the unique nature of real estate. Berryhill v. Hatt, 428 N.W.2d 647, 657 (Iowa 1988) (citing Moser v. Thorp Sales Corp., 256 N.W.2d 900, 907 (Iowa 1977)).
¶ 13. For the reasons we have discussed, we find that the chancellor was entirely correct in concluding that the contract had not lapsed for its failure to close by the December deadline under the circumstances. There was, therefore, no error in that aspect of the chancellor’s ruling. We affirm the validity of the sale and the resulting conveyance to Kirkland.
¶ 14. This determination necessarily brings us to the second dispute presented in this appeal, which involves the proper distribution of the proceeds from the sale of the property.
IV.
Entitlement to Sales Proceeds
¶ 15. Mississippi case law makes plain that the doctrine of ademption, as it developed under the common law, applies when determining competing rights of in *472 dividuals claiming an interest in some part of the testator’s estate. The doctrine, as it is applied in matters relating to testamentary disposition in this state, was set out in the case of Mississippi Baptist Foundation, Inc. v. Estate of Matthews as follows:
Ademption typically “occurs when a testator in his lifetime disposes of a piece of property he has specifically devised or bequeathed in his Will. The effect is that the gift fails since the testator at his death did not own the property.”
Mississippi Baptist Foundation, Inc. v. Estate of Matthews, 791 So.2d 213, 218(¶ 20) (Miss.2001) (quoting Robert A. Weems, Wills and Administration of Estates in Mississippi § 9-20 (2d ed.1995)).
¶ 16. It is important to observe that, in the matter of considering specific bequests or devises and questions of ademption, the doctrine traditionally requires the identical property to be an asset of the estate at the time of testator’s death. By way of example, in Welch v. Welch, the testator specifically devised a Packard automobile to his wife but, after executing the will, replaced that vehicle with a Lincoln automobile. Welch v. Welch, 147 Miss. 728, 732-33, 113 So. 197, 198 (1927). In that situation, the Mississippi Supreme Court held that the disposition of the Packard worked as an ademption of the specific bequest and found that the beneficiary had no claim to the vehicle that had replaced it. Id. As a result, the Lincoln passed as a part of the decedent’s residual estate. Id.
¶ 17. It may be observed that some other states, apparently concluding that a strict application of the principles of ademption may serve to produce unanticipated and unfair results, have adopted nonademption statutes. Alabama has adopted such a statutory provision as Section 43-8-227 of the Alabama Code. That section deals with a number of different circumstances, and, rather than quote it in full, we simply observe that the official commentary in the code relating to this section provides that
[t]he intent of this section is to prevent ademption in all cases involving sale, condemnation or destruction of specifically devised assets where testator’s death occurred before the proceeds of the sale, condemnation or any insurance, had been paid to the testator.
Ala.Code § 43-8-227, cmt. (1975).
¶ 18. Mississippi has not seen fit to legislatively modify the working of any of the aspects of the ademption doctrine as it developed under the common law. Thus, under principles of ademption, it can be said with certainty that, had the sale actually closed prior to Pickett’s death, the Van Ettens would have no claim against the proceeds derived from the sale, even in the circumstance where they remained a separate asset of the testatrix, readily identifiable as being the fruits of the transaction.
¶ 19. The issue to be determined is whether the unanticipated death of Pickett, coming after execution of a binding contract to sale but before the contract was finally carried out, produces the same result. The chancellor relied on the doctrine of equitable conversion to conclude that the execution of a binding contract of sale transformed Pickett’s title to the real estate into personalty consisting essentially of the right to receive the contracted-for sales price, while the purchaser under the contract became, on equitable considerations, the owner of the property. Thus, insofar as Pickett was concerned, upon the execution of the contract, she no longer owned the exact item devised in the will, which was the real property itself, the result being that the devise was adeemed. *473 This resulted in an ademption of the previous devise of the real property.
¶ 20. The chancellor correctly concluded that there was no existing case law in Mississippi that dealt with the effect of principles of ademption on the particular facts presented in this case. In that situation, the chancellor looked to other jurisdictions for persuasive authority and determined that the contract of sale under generally-accepted common law principles acted as an ademption of the previous specific devise of the same property. Our research has led us to the conclusion that the chancellor was correct in her determination of the generally-accepted rule in such circumstances.
¶ 21. A recent example of a jurisdiction following the general rule is found in the Massachusetts case of Kelley v. Neilson, 433 Mass. 706, 745 N.E.2d 952 (2001). In that case, the Massachusetts Supreme Judicial Court found that a contract for sale of land, though not closed prior to the seller’s death, worked an ademption of a specific devise of that same property contained in an earlier-executed will. Id. at 961. A North Dakota case raised the same issue but produced a different result based on its own form of a “nonademption” statute, but even that case went on to say that, but for the statute, “[ujnder the strict rule of the common law such a contract to sell would, without question, have revoked the specific devises.” Shure v. Dahl, 80 N.W.2d 825, 826 (N.D.1957) (citations omitted).
¶ 22. Several treatises on will construction have spoken generally to the issue. In The Handbook of the Law of Wills by Thomas E. Atkinson, the following passage appears:
When the property bequeathed or devised has not been conveyed but only subjected to a contract of sale by the testator, the orthodox view is that the testamentary provision is adeemed and that the right to enforce the contract and receive the proceeds does not pass to the legatee or devisee.
Thomas E. Atkinson, The Handbook of the Law of Wills § 134, at 744-45 (2d ed.1953).
¶ 23. Another treatise offered the view that the issue was not one of ademption but was one of implied partial revocation of the will by the subsequent contract that was, on its face, inconsistent with the previous devise. The result, despite the difference in language, is the same:
Under the common-law rule it has been held that a devise may be revoked by a conveyance or contract to convey though wholly ineffectual to pass title, but this would seem to be put upon the ground of revocation by subsequent instrument.
George W. Thompson, The Law of Wills § 17, at 266-67 (3d ed.1947) (emphasis added).
¶ 24. In the absence of any statutory enactment by the Mississippi Legislature altering what appears to be a widely-recognized rule of will interpretation under the common law, we are convinced that the chancellor was correct and that the general rule set out above must be applied to this case.
¶ 25. The contract of sale gave to Kirkland the absolute right to purchase the real property. Under the rule of construction discussed above, the execution of that contract worked as an ademption of the specific devise of that same property to the Van Ettens. In that circumstance, the Van Ettens have no claim to the real property or to the proceeds ultimately realized when the sale of the land was closed pursuant to the contract of sale.
¶ 26. THE JUDGMENT OF THE CHANCERY COURT OF HINDS COUNTY IS AFFIRMED. COSTS OF *474 THE APPEAL ARE ASSESSED TO THE APPELLANTS.
KING AND SOUTHWICK, P. JJ., BRIDGES, THOMAS, LEE, IRVING, AND MYERS, JJ., CONCUR. CHANDLER AND GRIFFIS, JJ., NOT PARTICIPATING.